**Scott BUETHE, Plaintiff-Appellant,**

v.

**BRITT AIRLINES, INC.,
Defendant-Appellee.**

No. 84–1116.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 21, 1984.

Decided Dec. 11, 1984.

Stephen L. Trueblood, Bolin, Trueblood & Rennolet, Terre Haute, Ind., for plaintiff-appellant.

Paul D. Jones, Ford & Harrison, Atlanta, Ga., for defendant-appellee.

Before COFFEY and FLAUM, Circuit Judges, and CAMPBELL, Senior District Judge.*

FLAUM, Circuit Judge.

Appellant Scott Buethe appeals from the district court's order granting appellee Britt Airlines' motion for summary judgment. The district court held that Buethe failed to state a cause of action for his allegedly wrongful termination by Britt both under the Federal Aviation Act, 49 U.S.C. §§ 1301 *et seq.*, and under Indiana law. We reverse the district court's order with respect to the state law claim and remand for consideration of whether juris-

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

diction over the state law claim can properly be exercised in this case.[1]

## I. BACKGROUND

Scott Buethe was employed by Britt Airlines, Inc. ("Britt") as a part-time co-pilot from March 25, 1979, to June 23, 1980, when he was discharged. During his employment, Buethe was an hourly employee who had no written employment contract with Britt.

Buethe alleges that he was wrongfully discharged by Britt Airlines because of two separate incidents during the spring of 1980 when Buethe refused, because of alleged defects in the aircraft, to fly the aircraft to which he was assigned. The first of these incidents took place on March 10, 1980, when Buethe refused to fly a plane carrying thirteen commercial passengers from Chicago's O'Hare International Airport to Terre Haute, Indiana because of a problem with the plane's "auto-feather system." The pilot in command of that flight, Captain Ralph Swanson, allegedly wanted to proceed with the flight notwithstanding the mechanical problem, which would have violated Federal Aviation Administration ("FAA") regulations. Buethe's refusal to fly the plane forced Britt to cancel the flight, whereupon Captain Swanson and Buethe ferried the plane back to Terre Haute, without passengers, for repairs.

After arriving in Terre Haute, Captain Swanson reported to William Cummings, the Director of Operations at Britt, that Buethe had pre-empted the decision of the pilot in command concerning the flight cancellation by refusing to fly before Swanson had an opportunity to evaluate the situation. Buethe claims that several days after the March 10 incident, Cummings told him that "whenever a flight is cancelled, it costs the company a great deal of money, and that makes the company unhappy when they lose money."

The second incident occurred in Terre Haute on April 20, 1980, and again involved Captain Swanson as Buethe's pilot in command. Buethe noticed during a pre-flight inspection of the plane that a problem with the wing flaps was noted in the plane's log, and as the plane was taxied from the hangar to the terminal the fire warning system was found to be defective. After checking to see whether the warning light was a required item on the Minimum Equipment List, Buethe told Swanson that he "would not fly the aircraft in that condition." Buethe felt that Captain Swanson intended to proceed with the flight in spite of the mechanical problems because he taxied the plane to the terminal for passengers to board, went inside the terminal, and checked passenger loads for the flight. Swanson allegedly tried to obtain another co-pilot to replace Buethe but was unsuccessful. Swanson then called maintenance, and after a delay of several hours the plane was repaired and the flight proceeded.

On June 23, 1980, Buethe was terminated by Jack Ward, Britt's chief pilot. According to Buethe, Ward called him to his office and asked him what right he had to refuse to fly the aircraft on those two occasions when Swanson was the pilot in command. Ward also allegedly told Buethe that wing flaps were not necessary for the type of flying done by Britt and that a co-pilot should keep his eyes open and his mouth shut. Ward then terminated Buethe and told him he would never again fly for Britt as long as Ward was the chief pilot there.

Immediately thereafter, Buethe discussed his termination with William Britt, the company president, who agreed to review the matter. Mr. Britt later informed Buethe that he had considered the matter and had decided not to override Ward's decision.

In July 1980, shortly after his discharge, Buethe contacted the FAA and alleged that he had been terminated for refusing to fly aircraft with inoperative items. Appendix ("App.") at 38. The FAA conducted an investigation of Britt's operations but concluded that no enforcement action was warranted. App. at 41.

---

1. Buethe does not contest the district court's disposition of his federal claim.

Buethe filed the present action against Britt in Indiana state court on November 25, 1980, alleging wrongful and retaliatory discharge and asking for compensatory damages, attorney's fees under the "private attorney general concept," and punitive damages "to punish and to deter defendant from flying routes in violation of the restrictions and requirements of the FAA." App. at 15–16. The case was subsequently removed to the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1441 (1982), because of the complaint's allegations of Federal Aviation Act violations. Record ("R") 2.

Britt moved for summary judgment on August 18, 1981, on the ground that Buethe's complaint "fail[ed] to state a claim upon which relief [could] be granted." [2] On January 5, 1984, the district court granted Britt's motion for summary judgment. *Buethe v. Britt Airlines, Inc.*, 581 F.Supp. 200, 204 (S.D.Ind.1984). The district court held first that no private right of action, either express or implied, derived from the Federal Aviation Act. *Id.* at 203. The court then analyzed the Indiana case law on employment at will and concluded that Buethe similarly could not state a cause of action under state law. *Id.* at 204. On appeal, Buethe only contests the district court's dismissal of his state law claim.

## II. ANALYSIS

▪▪▪ The threshold issue in this case is whether the district court had subject matter jurisdiction over Buethe's state law claim once his federal claim was dismissed.[3]

The essence of the state law claim is as follows: Although the general rule in Indiana is that an employee at will can be terminated at any time for any cause whatsoever, or for no cause at all, *see Mead Johnson & Co. v. Oppenheimer*, 458 N.E.2d 668, 670 (Ind.App.1984), Indiana has recognized an exception to the employment at will doctrine when an employee is discharged for exercising a statutorily conferred right or fulfilling a statutorily imposed duty. *See Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 253, 297 N.E.2d 425, 428 (1973) (employee states claim of wrongful discharge by alleging that her dismissal was in retaliation for filing workmen's compensation claim under state workmen's compensation law); *Campbell v. Eli Lilly & Co.*, 413 N.E.2d 1054, 1061 (Ind.App.1980) (plaintiff fails to state claim of wrongful discharge when he demonstrates no statutory source for the alleged rights/duties he has exercised/fulfilled), *trans. denied*, 421 N.E.2d 1099 (1981). If Buethe had a statutory duty not to fly a plane with inoperative items, therefore, and if he contends that he was discharged for fulfilling that duty, he allegedly states a claim of wrongful discharge under Indiana state law.

Our disposition of this appeal is somewhat hindered by the record's dearth of information on certain key points. First, Buethe has asserted for the first time in these proceedings that there is diversity between the parties to this lawsuit, *see* Brief of Appellant at iii, which would confer federal jurisdiction over the state law claim under 28 U.S.C. § 1332(a)(1) (1982).

---

**2.** The district court properly treated this ambiguous motion as a motion for summary judgment under rule 56 of the Federal Rules of Civil Procedure rather than as a motion to dismiss for failure to state a claim upon which relief can be granted under rule 12(b)(6) because matters outside the pleadings were presented to and considered by the court. *See Buethe v. Britt Airlines, Inc.*, 581 F.Supp. 200, 200–01 (S.D.Ind. 1984); Fed.R.Civ.P. 12(b).

**3.** Although the parties did not address this issue, it is axiomatic that subject matter jurisdiction cannot be waived, and that courts must raise the issue *sua sponte* when it appears that subject matter jurisdiction is lacking. *See* Fed.R.Civ.P. 12(h)(3); *Gaunce v. deVincentis*, 708 F.2d 1290, 1291 (7th Cir.) (per curiam) (appellate courts can *sua sponte* consider whether district court possessed subject matter jurisdiction), *cert. denied*, —— U.S. ——, 104 S.Ct. 417, 78 L.Ed.2d 354 (1983); *Mayer Paving & Asphalt Co. v. General Dynamics Corp.*, 486 F.2d 763, 771 (7th Cir.1973) (lack of subject matter jurisdiction cannot be waived and must be raised by court on own motion), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 899, 39 L.Ed.2d 102 (1974).

Nothing in the record supports or refutes Buethe's allegation of diversity. Thus, the district court on remand may, in its discretion, permit Buethe to amend his complaint so as to establish that there was in fact diversity between Buethe and Britt Airlines at the time this action was commenced and that the amount in controversy exceeded $10,000. *See Seagraves v. Harris*, 629 F.2d 385, 390 (5th Cir.1980) (dismissal for want of jurisdiction generally not favored when alternate basis for jurisdiction exists); *Hoefferle Truck Sales v. Divco-Wayne Corp.*, 523 F.2d 543, 549 (7th Cir. 1975) (court's discretion to dismiss for lack of subject matter jurisdiction should be exercised sparingly when plaintiff could have pleaded the existence of jurisdiction and such jurisdiction in fact exists); 28 U.S.C. § 1653 (1982) (defective allegations of jurisdiction may be amended in trial or appellate courts); Fed.R.Civ.P. 15(a) (party may amend pleading with leave of court). If Buethe is unable to establish diversity, the district court could proceed to consider whether it had jurisdiction over the state law claim under the doctrine of pendent jurisdiction, as explained below. If on the other hand Buethe is able to establish diversity between the parties, then we would have a proper jurisdictional foundation upon which to address the merits of Buethe's state law claim.

 Assuming that there was no diversity between the parties to this action, the next step in the search for federal jurisdiction is to see whether there is independent federal question jurisdiction over Buethe's state law claim. The federal courts have federal question jurisdiction only over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1982). Although nothing in Buethe's complaint suggests that his state law claim arises under the laws of the United States, we will nonetheless address the issue briefly. It could be argued that there is federal question jurisdiction over Buethe's claim of unlawful

discharge because in order to prevail under Indiana law, Buethe may have to prove that he had a federal duty not to fly a plane with inoperative items, which would put the court in a position to decide issues of federal law. The problem with this argument is that a claim does not arise under federal law merely because a state law incorporates federal law by reference. *See Louisville & Nashville R.R. Co. v. Western Union Telegraph Co.*, 237 U.S. 300, 303, 35 S.Ct. 598, 599, 59 L.Ed. 956 (1915) (when foundation of right claimed is state law, suit arises under state law none the less that state law has attached condition that only federal law can fulfill); *Nuclear Engineering Co. v. Scott*, 660 F.2d 241, 249 (7th Cir.1981) (state law incorporation of federal law does not allow state law claims to be construed as essentially federal in nature), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). Here, any reference to federal law in Buethe's state law claim for unlawful discharge is at most indirect; first, any reference to federal law comes not from a state statute but rather from state common law, and second, it is unclear whether the state common law exception to the employment at will doctrine even applies when the source of the duty or right is federal law. In this case, therefore, "[t]he most one can say is that a question of federal law is lurking in the background .... A dispute so doubtful and conjectural, so far removed from plain necessity, is unavailing to extinguish the jurisdiction of the states." *Gully v. First National Bank*, 299 U.S. 109, 117, 57 S.Ct. 96, 99–100, 81 L.Ed. 70 (1936). Thus, Buethe's claim of wrongful discharge is not one "arising under" the laws of the United States and there is no federal question jurisdiction over the claim.

 Since there is no federal question jurisdiction over Buethe's state law claim, the next inquiry is whether the district court properly retained pendent jurisdiction over the state law claim once it dismissed Buethe's federal claim.[4] The doctrine of

---

**4.** The district court's order does not indicate that the court ever paused to consider whether

there was federal jurisdiction over the state law claim once it dismissed the federal claim on a

pendent jurisdiction gives a federal court power to hear a claim that has no independent basis for federal jurisdiction if the claim derives from a "common nucleus of operative fact" with a federal claim that is substantively sufficient to confer subject matter jurisdiction on the court. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The doctrine's justification "lies in considerations of judicial economy, convenience and fairness to litigants," *id.* at 726, 86 S.Ct. at 1139, which are furthered by allowing litigants to try all related claims in a single forum. When these three factors are not present, therefore, "federal courts should hesitate to adjudicate the state claims." *Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407, 422 (7th Cir.1980). As the Supreme Court reasoned in *Gibbs*,

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139 (footnotes omitted); *accord Smith*, 615 F.2d at 422. Thus, this court has consistently affirmed the district courts' exercise of discretion in dismissing pendent state law claims without prejudice when the federal claims are dismissed before trial.[5] We

have even vacated a district court's judgment on a pendent state law claim when all federal claims were dismissed before trial, with directions to dismiss the state law claim without prejudice. *See Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 188 (7th Cir.1984). Although this court has, on occasion, affirmed the district courts' exercise of discretion in retaining jurisdiction over pendent state law claims after the federal claims were dismissed, the federal claims in those cases were almost uniformly dismissed *after* trial.[6] The disposal of Buethe's federal claim on a motion for summary judgment thus strongly suggests that the district court should have declined to retain pendent jurisdiction over the state law claim.

Another factor arguing against the retention of this state law claim in the federal courts is the fact that the claim raises issues of first impression in Indiana. For example, a key question in this case is whether the *Frampton* exception to the employment at will doctrine applies when the source of the right or duty is federal rather than state law. In the absence of any state law precedent or guidance on the issue, federal courts in Indiana have independently reached inconsistent conclusions. *Compare Buethe v. Britt Airlines, Inc.*, 581 F.Supp. 200, 203–04 (S.D.Ind.1984) (stating that it stretches interpretative license to conclude that source of statutory duty under *Frampton* exception can derive from either state or federal law) *with Per-*

---

motion for summary judgment. This silence forces us to conclude that the district court never exercised its discretion on this threshold issue.

5. *See, eg., Jackson v. Byrne*, 738 F.2d 1443, 1448 (7th Cir.1984) (federal claims dismissed on motion for summary judgment); *Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407, 422 (7th Cir.1980) (federal claims dismissed before trial); *Nemkov v. O'Hare Chicago Corp.*, 592 F.2d 351, 353 n. 1 (7th Cir.1979) (federal claim dismissed for failure to state claim). *Cf. O'Brien v. Continental Illinois Nat'l Bank & Trust Co.*, 593 F.2d 54, 63–64 (7th Cir.1979) (reversing district court's dismissal of pendent state claims without prejudice after dismissing federal claims for failure to state claim when plaintiff

possibly time-barred from reasserting state claims in state courts).

6. *See Lyznicki v. Bd. of Educ.*, 707 F.2d 949, 953 (7th Cir.1983) (federal claim dismissed after trial); *Forest Laboratories, Inc. v. Pillsbury Co.*, 452 F.2d 621, 629 (7th Cir.1971) (federal claims dismissed after trial); *Hannigan v. Sears, Roebuck & Co.*, 410 F.2d 285, 287 n. 1, 294 (7th Cir.) (federal claims dismissed on motion for directed verdict), *cert. denied*, 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 17 (1969). *Cf. Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 452 (7th Cir.) (district court had jurisdiction over state law cross-claims when settlement of federal claims not approved until after start of trial), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982).

ry v. Hartz Mountain Corp., 537 F.Supp. 1387, 1389 (S.D.Ind.1982) (holding that plaintiff states claim within *Frampton* exception by alleging wrongful discharge for fulfilling statutory duties under both federal and state antitrust laws).[7] Another question important to the resolution of Buethe's claim is whether the *Frampton* exception would apply if the statute creating the right was designed not for the protection of employees, as was the workmen's compensation statute in *Frampton*, but rather for the benefit of the general public. This question has similarly never been addressed by the Indiana courts. It is especially inappropriate for a federal court to make "needless decisions of state law" when the court would not be interpreting or following established principles of state law, but rather would be required to decide difficult questions which the state courts have never addressed. *See Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 458 (7th Cir.) (district court has discretion, on remand of pendent state claims after dismissal of federal claims affirmed, to dismiss pendent claim involving "novel and difficult issues of state law"), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982); *Financial General Bankshares, Inc. v. Metzger*, 680 F.2d 768, 769 (D.C.Cir. 1982) (abuse of discretion for district court to exercise pendent jurisdiction over novel and unsettled questions of District of Columbia law after dismissal of federal claims); *Nottelson v. A.O. Smith Corp.*, 423 F.Supp. 1345, 1348 (E.D.Wis.1976) (declining to exercise pendent jurisdiction over state law claim in light of ambiguity of state law on the subject).

In a case similar to Buethe's, the Second Circuit agreed that there was no federal jurisdiction over a pendent state law claim once the federal claims were dismissed. *See Pavolini v. Bard-Air Corp.*, 645 F.2d 144 (2d Cir.1981). The plaintiff in *Pavolini* was a pilot who alleged that he had been unlawfully discharged for reporting to the FAA Bard-Air's violations of air safety regulations promulgated under the Federal Aviation Act of 1958. He alleged that his discharge violated the Federal Aviation Act of 1958, the Occupational Safety and Health Act of 1970, the First and Fourteenth Amendments, and state law. The district court dismissed Pavolini's complaint, finding that there was no implied cause of action for unlawful discharge under the Federal Aviation Act, that there was no state action, and that the court thus did not have pendent jurisdiction over any state law claims. *See Pavolini*, 645 F.2d at 146. The Second Circuit affirmed the district court's judgment, concluding that

> there is no proper basis for federal jurisdiction here. Since federal courts are courts of limited jurisdiction, Pavolini's remedy, if any, lies in the state courts, which have traditionally exercised jurisdiction over controversies between employers and employees and where Pavolini still has an action pending.

*Id.* at 148 (footnotes omitted). The reasoning of the Second Circuit is equally applicable here. Buethe will be free to pursue his claim of unlawful discharge in the state courts, where he originally brought this suit, if the claim is dismissed without prejudice by the district court on remand.[8]

---

7. It appears that the district court below was not made aware of the preceding decision in *Perry*. *See Buethe*, 581 F.Supp. at 203 ("No case has engrafted rights arguably deriving from federal statutes in applying the *Frampton* exception."). Although it is arguable that the district court would have reached a different conclusion had it been aware of *Perry*, the fact that these two district courts independently arrived at differing conclusions illustrates the lack of state law guidance on the issue.

8. Indiana law provides that if an action is commenced in a timely fashion and is subsequently dismissed for any reason other than negligence

in its prosecution, then a new action may be brought within 5 years after the dismissal and be deemed a continuation of the first. IND. CODE § 34-1-2-8 (1982). *See Eves v. Ford Motor Co.*, 152 Ind.App. 34, 42-43, 281 N.E.2d 826, 831 (1972) (statute saves claim brought in state court after expiration of original statute of limitations when brought within 5 years after same action abated by federal district court for jurisdictional reasons); *Abele v. A.L. Dougherty Overseas, Inc.*, 192 F.Supp. 955, 956-57 (N.D. Ind.1961) (statute saves employment action brought in state court after expiration of original statute of limitations when brought within 5

## III. CONCLUSION

The district court on remand should first determine whether there is federal diversity jurisdiction in this case. If not, the court should decide whether the Indiana state courts would be the more appropriate forum for the resolution of Buethe's state law claim in light of the fact that the federal claim was dismissed on a motion for summary judgment and that the claim of unlawful discharge raises novel and unsettled questions of Indiana law. Accordingly, we reverse the district court's grant of summary judgment on Buethe's state law claim and remand to the district court for consideration of the jurisdictional issues as directed in this opinion.

years after identical claim dismissed without prejudice by federal district court).

